IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00462-RBJ

EIGHTH DISTRICT ELECTRICAL PENSION FUND, and
TRUSTEES OF EIGHTH DISTRICT ELECTRICAL PENSION FUND,

      Plaintiffs,

v.

STANDARD ELECTRIC COMPANY, a Colorado corporation, and
WINDY POINT ELECTRIC COMPANY,

      Defendants.

---

## ORDER

---

     This case is before the Court on (1) defendant Windy Point Electric Company's motion to dismiss and for summary judgment; (2) plaintiff's motion for summary judgment; (3) plaintiff's motion to amend the pleadings to add Mark Kulow as an additional defendant; (4) plaintiff's motion for attorney's fees.  The Court took the motions under advisement at the conclusion of a hearing on June 28, 2013.

**Facts**

Littleton Electric – Standard Electric

     We start with some significant history provided by the file and the court's opinion in *Eighth District Electrical Pension Fund v. Littleton Electric, Inc.*, No. 08CV431, 2009 WL 5210511 (D. Colo. Dec. 23, 2009)(Matsch, J).  Littleton Electric, Inc. was incorporated in 1974 by Mark Kulow and other family members.  In 1985 Mr. Kulow bought his father's shares and became the majority shareholder.  By 2006 Mr. Kulow owned all the stock and was the sole director of the company.

1

Mr. Kulow is a master electrician. Littleton Electric's primary business was subcontracting electrical work for highway projects with the Colorado Department of Transportation. However, due to losses on a contract for electrical work at the Northglenn Wastewater Plant, Littleton Electric became insolvent and ceased operations in December 2006. Meanwhile, Littleton Electric had not been making payments to union pension funds that were required under applicable collective bargaining agreements.

Mr. Kulow and his son Michael, who had no previous experience in electrical contracting, formed a new corporation, Standard Electric Company, in January 2007. As the court later found, however, "Standard Electric was a fresh start only in the sense that a new corporate form was created to carry on the contracting business of Littleton Electric." *Id.* at *2. Mark Kulow's experience as a master electrician and business manager were Standard Electric's principal assets. Although in form Mark was an employee who worked under Michael's management, the substance was the opposite. There was "a complete continuity of management between Littleton Electric and Standard Electric." *Id.* Funds from a Littleton Electric bank account were used for Standard Electric's initial operating costs. Standard Electric took over certain Littleton Electric contracts. Standard Electric took or purchased equipment from Littleton Electric. Littleton Electric's lead man on the Western Slope, Chad Harris—Michael Kulow's cousin—took the same position with Standard Electric.

The above-referenced lawsuit, case number 08CV431, was filed on February 29, 2008. Plaintiffs, the Eighth District Electrical Pension Fund and related trustees and entities, sued Littleton Electric and Standard Electric under Section 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132, to collect delinquent employer

contributions owed by Littleton Electric to the plans. Shortly thereafter Mr. Kulow and his wife filed under Chapter 7 of the Bankruptcy Act. Littleton Electric did not file bankruptcy.

The court found that Standard Electric was the successor to and alter ego of Littleton Electric. Although the court did not find evidence of fraud or a wrongful motive, it concluded as a matter of fairness and the strong public policy of ERISA in the protection of workers' earned benefits that Standard Electric should be held liable for the debt of Littleton Electric to the pension funds. *Id.* at *3. On January 26, 2010 judgment was entered in favor of the plaintiffs against both Littleton Electric and Standard Electric, jointly and severally, in the amount of $149,362.58 plus costs, attorney's fees and post-judgment interest. The amounts of costs ($961.20) and attorney's fees (plus $49,579) were set in later orders.[1]

Standard Electric – Windy Point Electric

In August 2010 Standard Electric entered into a "Settlement Agreement" with the Eighth District Electrical Pension Fund [filed in this case as docket #1-4] by which it would satisfy the judgment in case number 08CV431. It agreed to make an initial payment of $8,000, followed by monthly payments of $800 for 30 months, followed by monthly payments of $1,000 for 30 months (cumulatively totaling $62,000), plus 35% of its Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA") not to exceed $150,000. Michael Kulow signed the Settlement Agreement as "President" of Standard Electric. At that time, however, Mark Kulow was still listed as the "Responsible Individual" for Standard Electric with the Colorado Division of Registrations. *See* Company Information Form [#22-2]. He was also the holder of the master electrician's license for Standard Electric.

Standard Electric made the initial $8,000 payment and 13 monthly payments of $800 (a total of $18,400) but has made no further payments. Also, Standard Electric did not provide

---

[1] These amounts are not set forth in the reported opinion but were obtained from the court file.

records necessary to calculate the EBITDA.  Mark Kulow testified at the June 28, 2013 hearing that plaintiffs demanded $350,000 to resolve the matter, and that he sent them a letter warning that if they did not "back off," Standard Electric would have to fail.  The actual letter, dated December 8, 2010 [#22-2 at 24] concerns "withdrawal liability," not the deficiency on the Settlement Agreement per se, but I will assume that the deficiency was included within plaintiffs' calculation of Standard Electric's withdrawal liability.[2]  Mr. Kulow represents in the letter that the funds' delay in notifying Standard Electric of its withdrawal liability had caused "problems" and impacted Standard Electric's "ability to plan."

Mr. Kulow also reported in this letter that "[g]iven the ruling from Judge Matsch regarding the status of Standard Electric as a continuation of Littleton Electric (solely for payment of contributions to the Fund), Michael Kulow has resigned from the management of Standard Electric and I am the sole owner of Standard Electric." *Id.*  Mr. Kulow signed the letter as President of Standard Electric.  Mr. Kulow testified that when he received no response to his letter, the decision was made to close the doors.  Mr. Kulow says that the decision to close Standard Electric was made by Michael Kulow and Kyle Christianson, a friend of Michael's who was working for Standard Electric.  His own letter casts substantial doubt on the credibility of that testimony, as by the time the decision was made, Michael had resigned from management of the company, and Mark had assumed the Presidency in addition to being the company's sole owner.

Meanwhile, Mark Kulow had formed a new business named Windy Point Electric on March 30, 2010, approximately three months after the court's order in case number 08CV431 and four months before the Settlement Agreement between the plaintiffs and Standard Electric.

---

[2] A "complete withdrawal" occurs when an employer ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan.  *See* 29 U.S.C. § 1383(a).  There can also be a "partial withdrawal."  *See* 29 U.S.C. § 1385.

Windy Point is a sole proprietorship.  As stated in its motion to dismiss [#21], "Windy Point Electric is only a name and does not exist separately from Mark Kulow."  That notwithstanding, I note that Mr. Kulow listed Frank Kulow, his 87-year old father, as the "responsible person" for Windy Point.  In any event, it is undisputed that there is no "Windy Point Electric Company" as the caption suggests.  The defendant, properly named, is simply Windy Point Electric.

Mark Kulow started hiring employees for Windy Point Electric in the fall of 2010.  Mark Kulow Deposition [#22-3] at dep. p. 70.  It is undisputed, or at least beyond any genuine dispute, that in addition to Mark Kulow, six of the seven employees of Windy Point Electric worked at Standard Electric: Michael Kulow, Kyle Christianson, Greg Flanigan, Jeremy Flanigan, Jeremy Barnes and Chad Harris.  *Id.* at dep. pp. 29-35.  The business of both entities is highway lighting and traffic signal work and trenching and back fill for underground electrical conduits.  *Id.* at dep. pp. 66-67.  It is also undisputed that the customers of both entities were primarily the Colorado Department of Transportation and contractors to the Colorado Department of Transportation.  *See id.* at 23, 26-27.  Windy Point Electric's office is in the same building as Standard Electric's, and it uses the same yard at that address as did Standard Electric.  *Id.* at 20, 55-56.  The two entities had one, though apparently only one, common vendor.  *Id.* at 60-61.  This information is summarized by plaintiffs in a chart compiled from discovery responses. [#22-2 at 24].

Plaintiffs' First Claim for Relief in the present case, brought under sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, seeks a judgment against Standard Electric for breach of its obligations as established in the previous case.[3]  Plaintiffs' Second Claim for Relief, also

---

[3] The Settlement Agreement provided that in the event of a default, plaintiffs could either deem the entire balance immediately due or deem the agreement void and execute upon the full amount of the judgment.  [#22-2 at 11, ¶7].

brought pursuant to sections 502 and 515 of ERISA, is asserted against Windy Point Electric as the allegedly disguised continuance or alter ego of Standard Electric.

Standard Electric was served by service of the summons and complaint on "Mark Kulow, as registered agent and the responsible person." [#7].[4] It did not respond to the complaint, and on April 9, 2013 this Court granted plaintiffs' motion for a default judgment against Standard Electric in the amount of $207,436.23, comprised of $180,227.48 due on the previous judgment (after subtracting payments made under the Settlement Agreement) plus $27,208.75 calculated as a statutory remedy per 29 U.S.C. § 1132(g)(2)(C). The judgment also includes post-judgment interest at the legal rate, costs and attorney's fees. Costs were taxed on May 9, 2013, and attorney's fees for the Standard Electric portion of the case are addressed in this Order.

The claim against Windy Point Electric and Mark Kulow are the subjects of the parties' competing motions for summary judgment which are addressed in this Order.

**Conclusions**

**Plaintiffs' Motion for Leave to Amend Pleadings to Name Mark Kulow as Additional Defendant [#26]: GRANTED.**

As represented in Windy Point Electric's motion to dismiss [#21], it is a sole proprietorship and does not exist separately from Mark Kulow. It is not apparent that it is necessary to join Mr. Kulow in the circumstances, as he already appears to be a party, but for the sake of completeness this motion is granted.

**Defendant Windy Point Electric Company Motion to Dismiss Plaintiffs' Complaint and for Summary Judgment [#21]: DENIED.**

Mr. Kulow makes three arguments: (1) that in a bench conference during the trial of case number 08CV431, Judge Match told him that he has a right to a livelihood in his field of

---

[4] It appears that Michael Kulow was the registered agent for Standard Electric for at least some period of time before the registered agent designation was changed to Mark Kulow on or about December 23, 2010. *See* Colorado Secretary of State records included in docket #22-2 at 15-20.

expertise if separate and without continuity or succession of operations from Standard or Littleton Electric; (2) that "he did not participate in the Settlement Agreement and was not involved in the operations of Standard;" and (3) that any obligation he might have had with respect to the obligations of Littleton Electric and Standard Electric was discharged in his personal bankruptcy case.

As to his first argument, I do not know what occurred during a bench conference in the trial.  If it was on the record, then presumably Mr. Kulow could have obtained a transcript and provided it to this Court, but he did not.[5]  In any event, I do not disagree with what Judge Matsch is reported to have said.  For the reasons discussed below in connection with plaintiffs' motion for summary judgment, however, I do not agree that Mr. Kulow's business operation under the name Windy Point Electric is "separate and without continuity or succession of operations from Standard or Littleton Electric."

Regarding his second argument, it is true that Mr. Kulow did not personally sign the Settlement Agreement, and I will assume, without deciding, that he did not participate in the negotiation of the agreement.  However, it is indisputably incorrect to suggest that he did not participate in the operations of Standard Electric.  The Court finds that:

- In the first place, Standard Electric could not do business as an electrical contractor without Mark Kulow's master electrician's license.

- Second, Mark Kulow was listed with the Colorado Division of Registration as the "responsible person" for Standard Electric.

---

[5] The court file of 08CV431 does contain two partial transcripts, one of closing arguments, and the other of the court's brief comments when it took the case under advisement.  I have reviewed those excerpts but did not find the comments at the bench to which Mr. Kulow has referred.

- Third, as Mark Kulow's December 8, 2010 letter to the funds (Joanne K. Knight, Pension Fund Administrator) states, Michael resigned from the management of Standard Electric, and Mark, the sole owner, took over formally as President.

- Finally, and most significantly, Judge Matsch's findings in the 2008 case contradict what Mr. Kulow is now suggesting.  The court found that while Littleton electric was experiencing financial problems, Michael Kulow was living and working in San Diego.  His work, which included managing a nonprofit volleyball club, was unrelated to electrical contracting.  After getting married Michael decided to return to Colorado and suggested that he go to work at Littleton Electric.  Mark discouraged that.  Instead, Mark and Michael formed Standard Electric, and Michael was given 1000 shares of stock.  However, Michael "had no relevant experience in the business of electrical contracting." *Eighth District Electrical Pension Fund*, 2009 WL 5210511 at *2.  "Mark Kulow conducted the business of Standard Electric.  Michael Kulow remained in San Diego until July, 2008 when he came to Colorado and became active in the business operations."  He began as an apprentice and had not completed his apprenticeship to become a journeyman electrician at the time of the trial.  The court found, "Mark Kulow's training, experience and reputation as a master electrician and business manager were the principal assets of Standard Electric.  To suggest that Mark Kulow was an employee under Michael Kulow's management is to invert the facts of the relationship in Standard Electric.  Michael Kulow was only the titular head of this company.  There was complete continuity of management between Littleton Electric and Standard Electric." *Id.*

Finally, as to the bankruptcy discharge, I first note the following undisputed facts.  Mark Kulow filed his Chapter 7 petition on July 25, 2008.  [#10 at 7].  He listed the Eighth District Electrical Pension Fund as an unsecured creditor for "potential liability through Littleton Electric, Inc. for contributions to related funds for pensions, vacations and health insurance." Case 08-20916, Schedule F [document #1 at 43 in the bankruptcy case file].  Plaintiffs did not submit a claim in the bankruptcy case.  Mr. Kulow received his discharge on February 4, 2009. [#21 at 8].

In support of the argument that Mr. Kulow's obligation for the debts of Littleton Electric and Standard Electric was discharged in his personal bankruptcy, Windy Point Electric's motion points out that several cases have held that "withdrawal liability" is a pre-petition unsecured liability, dischargeable in bankruptcy.  *See, e.g., CPT Holdings, Inc. v. Industrial & Allied Employees Union Pension Plan, Local 73,* 162 F.3d 405, 408 (6th Cir. 1998).  Windy Point further argues that debtors are discharged from all debts that arose before the date of the order for relief under Chapter 7.  Subject to certain exceptions, I agree.  *Cf. In re Parker,* 264 B.R. 685, 694 (B.A.P. 10th Cir. 2001), *aff'd,* 313 F.3d 1267 (10th Cir. 2002)(individual debtor permitted to reopen Chapter 7 case to discharge a pre-petition debt that had not been listed in the petition where no exception applied).  However, I do not agree that those propositions provide Mr. Kulow a shield against liability here.

Mr. Kulow may have had personal liability for Littleton Electric's obligations to the funds.  It has been suggested that he personally guaranteed those obligations, although there is nothing in the record indicating that he ever admitted to or was determined to have such personal liability.  However, I will assume to his benefit that he had personal liability as guarantor, and either that this liability was discharged or that the case could be reopened and the liability then

discharged.  The problem is that this pre-petition obligation is not the basis of plaintiffs' claim

here.  The obligations of Littleton Electric and Standard Electric to the funds were not discharged

in bankruptcy.  Mr. Kulow's liability for those obligations is alleged to have arisen by his

creation and operation, subsequent to his bankruptcy petition and discharge, of a successor entity

that is in substance the alter ego of Standard Electric and Littleton Electric.  That is post-petition

conduct, and his prior discharge in bankruptcy has no application to it.  *See In re Goodman*, 873

F.2d 598, 602 (2d Cir. 1989)(the discharge of an individual's pre-petition liability for the debts

of alter ego of companies did not prospectively shield him from post-petition conduct that makes

him an alter ego of those companies).

**Plaintiffs' Motion for Summary Judgment [#22]: GRANTED.**

The Court concludes that, based upon facts that are undisputed or beyond any genuine

material dispute, Windy Point Electric, which is none other than Mark Kulow, is the successor to

Standard Electric and is liable for Standard Electric's debts pursuant to the same equitable

doctrine under which Judge Matsch concluded that Standard Electric was liable for the debts of

Littleton Electric.  As the court said then, "it is a question of fairness, recognizing the strong

public policy in ERISA for the protection of workers' earned benefits."  *Id.* at *3.

I do not overlook or discount the fact that Windy Point Electric was created while

Standard Electric was still operating.  Windy Point Electric was formed on March 30, 2010.  Mr.

Kulow began hiring employees in the fall of 2010.  Mr. Kulow's dispute with the plaintiffs as

President of Standard Electric regarding "withdrawal liability" was communicated in his letter of

December 8, 2010.  Standard Electric apparently ceased doing business in the spring of 2011.

Mark Kulow deposition [#22-3] at dep. pp. 14-15.  The Settlement Agreement was apparently

made in September 2011, meaning that Windy Point Electric had existed for approximately 17 months by then.

Nevertheless, as there was between Littleton Electric and Standard Electric, there was, in substance, a continuity of management between Standard Electric and Windy Point.  There was a continuity of business operations and purpose.  Windy Point employed essentially the same people.  It worked essentially for the same customers, doing the same type of work, working out of the some location.  The fact that, this time, Mark Kulow constituted the new business as a sole proprietorship changes nothing of legal significance.

In short, the Court finds that there is a clearly established pattern.  Littleton Electric accumulated an obligation to the workers' pension funds.  It did not honor it—perhaps because it could not, although it did not attempt to discharge the obligation in whole or part through the bankruptcy court.  Instead, Mr. Kulow created Standard Electric and, as Judge Matsch found, carried on essentially the same business in the new company.  The court concluded, not on the basis of fraud or wrongful motive but instead as a matter of fairness, that Standard Electric was liable for the delinquencies of Littleton Electric in its obligations to the plaintiff funds.  To Standard Electric's credit, it made some effort to satisfy the judgment by entering into the Settlement Agreement and making a few payments.  However, possibly motivated by what Mr. Kulow considered to be plaintiffs' inappropriate demand with respect to "withdrawal liability," the pattern repeated.  Mr. Kulow closed Standard Electric and Windy Point Electric carried on. This Court has no desire to prevent Mr. Kulow from earning a livelihood, nor does it attribute to him a wrongful motive.  However, on the facts presented here, the Court can only conclude that the obligation to the pension funds that began with Littleton Electric and continued to Standard Electric now attaches to Mr. Kulow personally.

**[Plaintiffs'] Motion for Attorney's Fees [#35]:**

Plaintiffs seek an award of attorney's fees against Standard Electric Company and Windy Point Electric (Mark Kulow) in the amount of $1,485 expended in the portion of this case against Standard Electric.  These fees are sought pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).  Under that statute, in any action under Title 29 brought by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, "the court shall award the plan . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant."  Plaintiffs support this request with an itemized accounting of the time recorded (totaling 5.4 hours) and the rate charged for this work ($225) [#35-2], and with counsel's affidavit verifying that he did work those hours and believes the fees were necessary, reasonable and related only to the portion of the case against Standard Electric. [#35-1].  Standard Electric, which had already defaulted and was the subject of a default judgment, did not respond to this motion.

Accordingly, because no objection has been raised as to plaintiffs' entitlement to an award of attorney's fees against Standard Electric; no objection has been raised to the necessity or reasonableness of the fees requested (either the time recorded, the hourly rate charged, or the use of a time-based billing method); no request for a hearing has been made; and there is nothing about the time recorded, the rate charged or the billing method that appears inappropriate on its face; the Court grants the motion in part and awards to the plaintiffs and against Standard Electric the fees requested in this motion.  The Court does not award this amount directly against Windy Point Electric (Mark Kulow), as the fees are attributable solely to the Standard Electric portion of the case.

**Order**

1.  Motion # 21 is DENIED.

2.  Motion #22 is GRANTED.

3.  Motion #26 is GRANTED.

4.  Motion #35 is GRANTED IN PART and DENIED IN PART.

5.  The Court has previously entered a default judgment in favor of the plaintiffs and against defendant Standard Electric Company in the amount of $207,436.23 plus reasonable attorney's fees (now determined to be $1,485) and costs (taxed in the amount of $290 per docket #36) plus post-judgment interest at the legal rate.  [#32].

6.  The Court now directs that judgment be entered in favor of the plaintiffs and against defendants Windy Point Electric and Mark Kulow.  The parties shall attempt to agree on the amount of the judgment to be entered, including reasonable attorney's fees, costs and interest. Any stipulation shall be filed no later than August 30, 2013.  If the parties cannot agree, then please set a hearing.

DATED this 1st day of August, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

13